UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

JACK HUGHES and BARBARA HUGHES,

        Plaintiffs,

vs.                          Case No. 2:04-cv-485-FtM-29DNF

MATCHLESS METAL POLISH COMPANY,

        Defendant.
_____

**OPINION AND ORDER**

     This matter comes before the Court on (1) Defendant Matchless Metal Polish Company's Corrected Motion to Set Aside Settlement (Doc. #303) and (2) Defendant Matchless Metal Polish Company's Motion for Sanctions Against Plaintiffs and Their Counsel Pursuant to Federal Rule of Civil Procedure 37 and the Court's Inherent Power to Control the Proceedings Before it, To Revoke the Pro Hac Vice Admission of Plaintiff's Counsel and For Costs and Fees Pursuant to 28 U.S.C. § 1927 (Doc. #313). Plaintiffs filed Responses (Docs. #317, 319), and defendant filed a Notice of Filing (Doc. #321).

    Both motions have the same factual predicate. In sum, defendant asserts that plaintiffs deliberately failed to include Dr. Michael Crowley, a treating physician, in their initial disclosures, deliberately failed to identify Dr. Crowley in multiple responses to interrogatories, failed to supplement

discovery responses after claiming they had forgotten to disclose that Dr. Crowley had treated plaintiff Jack Hughes for smoking cessation in 1998, repeatedly lied under oath in deposition regarding Jack Hughes' smoking history, based their expert opinions on a false smoking history, and concealed information which would have enabled defendant to discover Jack Hughes' smoking history. (Doc. #313, p. 2.)  The Court heard oral argument on September 17, 2007.

**I.**

Plaintiffs Jack Hughes (Hughes) and his wife Barbara Hughes sued a number of defendants, including Matchless Metal Polish Company (Matchless Metal), in connection with Hughes' lung cancer, discovered in 2002.  Plaintiffs' theory was that Hughes contracted silica-related lung cancer as a result of his occupational exposure to silica in the course of self-employment as a jeweler from 1988 to 2002.  Hughes purchased and used bobbing and polishing compounds containing silica to cut and buff his jewelry.  Matchless Metals manufactured such a compound, which it sold to the three defendant distributors.  Plaintiffs' Fourth Amended Complaint (Doc. #215) alleges claims of negligence, negligent failure to warn, strict products liability, and loss of consortium against Matchless Metal.

Jack Hughes was a long-time smoker, and his smoking history was material and relevant to the claims and defenses in this litigation.

In September 2006, answers to interrogatories from Matchless Metal, plaintiffs identified six treating physicians and three hospital staffs in Florida which had provided relevant services. Plaintiffs stated "None" when asked to list the names and addresses of other physicians and medical facilities who examined or treated Hughes within the last ten years.

In November 2006, plaintiffs made a Rule 26 First Supplemental Initial Disclosure listing six Florida physicians and three Florida hospital staffs as "treating physicians of Plaintiff [who] may testify concerning medical history and diagnosis, treatment and the necessity and reasonableness of the medical treatment and related charges."

During a November 2006, deposition Jack Hughes testified that he had been a smoker in his early 20s, but was "dead certain" (and later "pretty sure" he was dead certain) he stopped smoking when his wife was pregnant in 1985. While medical records possessed by defendants indicated Hughes had stopped smoking in 1992, Hughes reiterated that he had stopped smoking when his wife became pregnant. When asked if he had "smoked at all since you quit?," Hughes stated "No." Hughes testified that he quit smoking by using smokeless tobacco and Nicorette gum. Hughes also testified that he did not remember telling medical providers he last smoked around 1990; he stated it was not possible that he was smoking to some degree up until 1990, but that he might have been using smokeless tobacco in 1990. He testified he used smokeless products for three

or four years after he stopped smoking. Hughes testified that he did not believe that his diagnosis was in any way caused by his past smoking history because it had been so long since he smoked. Hughes testified that he had no memory problems.

When he was asked who first prescribed Prozac, Hughes testified it was "Dr. Crowl" in Easton, Maryland. Hughes testified that the first name was Richard "I think," and later stated that the name was "Richard Crawley". Hughes could not remember the street where the doctor's office was located, but described him as a general physician. When discussing whether he had ever spoken to a medical provider about the effects of smoking on the lungs, Jack Hughes testified that "I think Dr. Crawley may have" told him he shouldn't smoke. He further stated that "when I was seeing Crawley, he also prescribed Nicorette Gum and a particular type of antidepressant that was used at the time to help quit smoking."

In his January 2007 deposition, Jack Hughes again testified he stopped smoking when his son was born in 1985 or 1986. When asked if he told Dr. Marcus in 2000 that he had quit smoking in 1995, Hughes testified that he didn't really smoke on a regular basis but might have said something like that if he would have smoked an occasional cigarette. He further testified that he "may have" continued smoking from time to time after he quit.

Hughes completed an errata sheet for his depositions on March 6, 2007, making various changes to his testimony. No change was

made concerning his continuation of smoking or Dr. "Crawley." (Doc. #278.)

Barbara Hughes testified by deposition in January 2007, that "I think" Jack Hughes quit smoking when she got pregnant with their son. When asked if Jack Hughes resumed smoking after that, she said "I think maybe – I don't know really. I don't know. I think he used that stuff you put in your mouth." . . . "I think that's what he used though. I don't think he smoked." When asked "to the best of your recollection, did your husband resume smoking after the birth of your son?" she replied "I don't think he did, no. I don't think he did." When asked if she was aware Jack Hughes smoked on occasion from 1985 to 1995, Barbara stated "I did not know that Jack smoked after about 1989, I guess. And I don't think he did." She further testified that she caught him with cigarettes once between 1985 to 1989.

Plaintiffs' two experts considered and relied upon Jack Hughes' smoking history and the fact that he quit smoking in 1985 in arriving at their opinions.

By Court Order (Doc. #249), mediation was to be completed by June 29, 2007. A mediation session was scheduled by counsel for June 13, 2007. Prior to mediation, counsel for co-defendant American Tripoli, Inc. (who presently represents Matchless Metal), realized there was a gap in Jack Hughes medical records. Counsel tasked a paralegal with the job of locating the missing Dr. Crawley and obtaining any available records. In due course Dr. Crawley was

determined to be Dr. Michael Crowley, and defense counsel issued a subpoena for his medical records of Jack Hughes. The medical records did not arrive prior to the mediation session.

On June 13, 2007, the mediation session was held and most of the defendants, including Matchless Metals, settled the case. Plaintiffs and Matchless Metal's attorney and insurer executed a written Mediation Settlement Agreement that day providing for payment of a certain sum in exchange for full releases and dismissal of the case with prejudice. The agreement also provided a confidentiality provision. The Court was notified of the settlement on June 26, 2007, by a Mediators Report (Doc. #283) and on July 2, 2007 by a Notice of Settlement (Doc. #284) filed by plaintiffs.

On or about July 3, 2007, defense counsel obtained the medical records from Dr. Crowley. The records revealed that Dr. Crowley had treated Jack Hughes in Maryland from 1989 to 2000. A January 30, 1989 note states: "Needs refill for nicorette." A July 9, 1993 note states "Jack Hughes wants Rx for Nicotene patches. has never seen you about this before - needs appt." A December 16, 1998 note states: "He has not been here for many years, he is considering smoking cessation, and using Nocorette gum for the past 3 months, has not smoked in that length of time. . . . He wants to try to get away from the nicotine entirely and does think he can do it without help."

On July 13, 2007, Matchless Metal filed a motion (Doc. #288) to extend the time in which to tender settlement proceeds and/or to set aside the settlement due to fraud. Matchless Metal asserted that "[t]he case was settled on June 13, 2007. . ." but sought time to consider the impact of the newly obtained medical records. The Court granted the motion (Doc. #291).

## II.

Defendants argue there are three grounds to find pervasive fraud: (1) the failure to disclose Dr. Michael Crowley as a treating physician; (2) Jack Hughes' false statements about when he last smoked; and (3) Barbara Hughes' false testimony about the last time Jack Hughes smoked. Matchless Metals seeks the following relief: (1) setting aside the settlement agreement; (2) dismissing the case with prejudice; (3) imposing fees and costs upon plaintiffs and their counsel; and (4) revoking the *pro hoc vice* status of counsel.

The fraud alleged in this case is what the courts refer to as "intrinsic" fraud. Parker v. Parker, 950 So. 2d 388, 391 (Fla. 2007)("Intrinsic fraud . . . applies to fraudulent conduct that arises within a proceeding and pertains to the issues in the case that have been tried or could have been tried. . . . false testimony given in a proceeding is intrinsic fraud. . . . In essence, . . . intrinsic fraud is the presentation of misleading information on an issue before the court that was tried or could

have been tried.") There are a number of sources of the court's authority to sanction a litigant for fraud or non-compliance with the rules of procedure.

The Court has the inherent power to assess sanctions for a party's bad-faith conduct, including setting aside judgments for fraud on the court and imposing attorney fees and costs, independent of statutory or rule provisions. Chambers v. NASCO, Inc., 501 U.S. 32, 44-50 (1991); Amlong & Amlong, P.A. v. Denny's, Inc., 457 F.3d 1180 (11th Cir. 2006), amended by ___ F.3d ___, 2006 WL 4758983, 2006 U.S. App. LEXIS 32739 (11th Cir. Sept. 17, 2007). "There is no question that a trial court has the inherent authority, within the exercise of sound judicial discretion, to dismiss an action when a plaintiff has perpetrated a fraud on the court." Howard v. Risch, 959 So. 2d 308, 310 (Fla. 2d DCA 2007)(citations omitted). Dismissal because of discrepancies between a party's discovery responses and the evidence developed by the opposing party in its investigation "should be made only on a clear showing of egregious conduct." Gehrmann v. City of Orlando, ___ So. 2d ___, 2007 WL 2403198, 2007 Fla. App. LEXIS 13248 (Fla. 5th DCA Aug. 24, 2007). Short of that, "allegations of inconsistency, non-disclosure, even falseness, can be brought to the jury's attention through cross-examination or impeachment." Id.

The Federal Rules of Civil Procedure also allow the court to deal with fraud, both generally and in specific contexts. "On motion and upon such terms as are just, the court may relieve a party . . . from a . . . proceeding for the following reasons: . . . (3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party; . . ." FED. R. CIV. P. 60(b)(3). To obtain relief under Rule 60(b)(3), the moving party must prove by clear and convincing evidence that the adverse party obtained the result through fraud, misrepresentations, or other misconduct, and must demonstrate that the conduct prevented it from fully presenting its case. Waddell v. Hendry County Sheriff's Office, 329 F.3d 1300, 1309 (11th Cir. 2003).

The standard for imposing sanctions under Rule 11 for filing an unreasonable pleading or other paper is set forth in Anderson v. Smithfield Foods, Inc., 353 F.3d 912 (11th Cir. 2003), and many other cases. Rule 26(g) provides for sanctions for conduct traceable to specific discovery abuses. Chudasama v. Mazda Motor Corp., 123 F.3d 1353, 1373 n.45 (11th Cir. 1997). Rule 37(b) authorizes a district court to impose sanctions for failure to comply with discovery orders, so long as the sanctions are both just and specifically related to the particular claim which was at issue in the discovery order. Insurance Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee, 456 U.S. 694 (1982); Serra Chevrolet, Inc. v. GMC, 446 F.3d 1137, 1147-51 (11th Cir. 2006).

Rule 41(b) provides a trial court with discretion to impose sanctions on a party who fails to adhere to court rules, but dismissal of a case with prejudice is a sanction of last resort, applicable only in extreme circumstances where there is a clear record of delay or willful conduct and a lesser sanction is inadequate to correct such conduct. Zocaras v. Castro, 465 F.3d 479, 483 (11th Cir. 2006). Mere negligence or confusion is insufficient. Id.

The Court also has authority to impose sanctions on counsel personally pursuant to 28 U.S.C. § 1927. The legal standards under § 1927 have been discussed in some length in Cordoba v. Dillards, Inc., 419 F.3d 1169, 1178 (11th Cir. 2005); Amlong, 2006 WL 4758983, *6-7; and Hudson v. Int'l Computer Negotiations, Inc., ___ F.3d ___, 2007 WL 2693505, 2007 U.S. App. LEXIS 22124 (11th Cir. Sept. 17, 2007).

**III.**

The Court concludes that the sanctions requested are not justified by the record, which the Court has carefully reviewed. It is clear that in response to the September 2006 interrogatories, Hughes should have disclosed Dr. Michael Crowley as a physician who had treated him within the past ten years. It is clear, however, that at least at the time of Hughes' deposition defense counsel were aware that Hughes had been seen by one or more physicians in Maryland prior to coming to Florida. Since plaintiffs' disclosures only listed Florida physicians and medical providers, it was clear

that there had been omissions. The Court's reading of Hughes' depositions satisfies the Court that Hughes was not intentionally withholding the identity or falsely testifying as to his memory of Dr. Crowley. Although he recalled the first name incorrectly, he was able to come up with the last name of "Crawley." The Court has listened to the audio of the deposition provided by counsel, and it too believes that counsel spelled "Crowley" even though the transcript reports "Crawley."

Hughes' deposition also places defense counsel on notice of potential evidence of his continued smoking, despite his protestation to the contrary. In addition to Hughes' admission that he may have continued smoking from time to time after he quit, Hughes specifically stated that Dr. Crowley prescribed Nicorette Gum and an antidepressant used to help quit smoking. This testimony placed all counsel on notice as to existence of another physician whose records had not been obtained and the potential that such records would contain evidence of continued smoking. Indeed, this caused Matchless Metal's current counsel to specifically seek and ultimately locate both Dr. Crowley and his medical records. Defendant could have rejected the settlement offer until it had obtained and adequately explored the anticipated medical records. E.g., Arrieta-Gimenez v. Arrieta-Negron, 551 So. 2d 1184, 1186 (Fla. 1989). The mediation cutoff date had not expired as of June 13, 2007, and counsel could have sought a continuance if necessary. The decision to settle without first

obtaining the medical records was reasonable, even if now regretted.

The Court is also not convinced that either plaintiffs provided false testimony. Barbara Hughes clearly did not because her responses were her opinion as to what she thought were the facts regarding her husband's continued smoking. While the new medical records contain entries which may undermine Hughes' testimony of only occasional smoking after 1985, it is not a foregone conclusion based on the notation alone. "Generally, unless it appears that the process of trial has itself been subverted, factual inconsistencies or even false statements are well managed through the use of impeachment at trial or other traditional discovery sanctions, not through dismissal of a possibly meritorious claim." Howard, 959 So. 2d at 311.

While setting aside a settlement agreement is a less severe sanction than dismissal, the Court concludes that even that sanction is not warranted in this case. The Court further concludes that the additional lesser sanctions requested, i.e., to revoke counsel's *pro hac vice* admission status and attorney's fees and costs, should also be denied.

Accordingly, it is now

**ORDERED:**

1.   Defendant Matchless Metal Polish Company's Corrected Motion to Set Aside Settlement (Doc. #303) is **DENIED.**

2. Defendant Matchless Metal Polish Company's Motion for Sanctions Against Plaintiffs and Their Counsel Pursuant to Federal Rule of Civil Procedure 37 and the Court's Inherent Power to Control the Proceedings Before it, To Revoke the Pro Hac Vice Admission of Plaintiff's Counsel and For Costs and Fees Pursuant to 28 U.S.C. § 1927 (Doc. #313) is **DENIED**.

3. The Clerk shall cancel the trial date, terminate all pending motions as moot in light of the settlement, and administratively close the case for a period of **THIRTY (30) DAYS** to allow the parties to submit a stipulation for dismissal of the case.

**DONE AND ORDERED** at Fort Myers, Florida, this __24th__ day of September, 2007.

                                                                      _John E. Steele_
                                                                      JOHN E. STEELE
                                                                      United States District Judge

Copies:
Counsel of record